## Marino v. Marino

*F. I. Farley,* for plaintiff.

*N. Stein,* for defendant.

BOK, P. J., October 31, 1951.—This is a proceeding in partition under the Act of May 10, 1927, P. L. 884 68 PS §§501-504, as amended, to divide, following the divorce of the parties, certain real estate held by them as tenants by the entireties. The property has been sold and the trustee has the proceeds for distribution.

By stipulation, the parties have asked me to dispose of certain claims that they have against each other, and have agreed to waive appeal, and to await my order showing distribution of the fund. I have consented to do this because of the peculiar circumstances of the case.

Defendant has claimed the value of certain clothing, money, watches, rings, and personal effects. These were in the home when he was arrested for murder on November 23, 1946, for which he is now serving a life sentence. He did not return to the house after that date. Plaintiff has lived there continuously since defendant's arrest but denies all knowledge of the articles enumerated. She suspects her son of having taken them but has no proof of it; the son was then of age and has disappeared beyond his mother's knowledge.

It must be remembered that the claims of both sides are against the fund and that the fund belongs equally to both. Neither should get any of the other's half without showing cause based on proof. Defendant has shown nothing but the value of the goods and their presence in the common home when he left it. His attitude on the stand was very decent towards his wife: he said that he didn't want to hurt her, that he didn't know whether she took his property, and that he was not saying that she did take it. It is quite possible that his property was taken by others without her knowledge and beyond her control to prevent. I have

no proof whatever of her taking it, of her responsibility for its safekeeping, or of her complicity in any scheme of taking it. Without such proof, it would be unfair to charge her share, which the law specifically gives her, with her absent husband's loss. And defendant could have had his property removed by his counsel or friends.

The case of Inman v. Wasler, 58 D. & C. 168 (1946), clearly prevents the assertion of such claims, and this one is accordingly disallowed.

The question arises of how to divide the agreed rental value of the property. The value is $35 per month, and it must be calculated either from the time of separation in November 1946, or from the date of the final decree in divorce, in January 1949, until the date of the sale in June 1951.

The division of rentals received from property, held by the entireties, while one spouse was in complete actual possession, has been the subject of several decisions. The cases of Wakefield v. Wakefield, 149 Pa. Superior Ct. 9 (1942); Weiner v. Weiner, 68 D. & C. 51 (1949), and Cullinan v. Cullinan, 72 D. & C. 146 (1949), take the view that the sanctity of marriage requires a continuation of the doctrine of per tout et non per my until the marriage is dissolved by divorce, and that the presumption of joint beneficial use must persist until then. Rather more liberal expressions appear in the Supreme Court cases of Gasner v. Pierce et al., 286 Pa. 529 (1926); O'Malley v. O'Malley, 272 Pa. 528 (1923); Berhalter v. Berhalter et al., 315 Pa. 225 (1934); Madden et al. v. Gosztonyi Savings and Trust Company, 331 Pa. 476 (1938), and Werle v. Werle, 332 Pa. 49 (1938).

The precise point arose in Klein v. Klein, 71 D. & C. 558 (1950), in which Judge Alessandroni allowed an accounting of rents before divorce, and we followed him in Olivieri v. Olivieri, C. P. 6, March term, 1948, no.

5912 (not reported). The rationale of these cases is that to allow accounting in cases where there is real bitterness, coupled with allegations of fraud and some showing that the spouse proceeded against has appropriated the income to his or her own use, would make a pretense of the presumption of joint use. The distinction is therefore made between such cases and those where fraud and appropriation is not alleged or shown.

In the case before me there is no suggestion of fraud or appropriation. Apparently Mrs. Marino worked, supported the child, paid down and carried the mortgage, and did some repairs. I should be hardy indeed to find that she has pocketed the money in defiance of her husband's interest. It is not easy, ever, to prove what results in joint benefit to the common property: it is just as difficult to say with conviction that the mere fact of joint possession by one spouse means that the absent spouse's interest has been overreached. Only definite indications of overreaching must break through the curtain of marriage before a court may require one spouse to account to the other. That this is usually done in the case of joint bank accounts is only because the very nature of the fund lends itself to a clear showing of fraud where it exists.

In short, the presumption of use for joint benefit should persist until there is a contrary showing. As none appears here, plaintiff's share should not be charged until the date of the divorce decree. From then until the sale in June 1951 the admitted figure is $525, and this is allowed defendant.

Defendant's final claim is for the value of two small insurance policies, totaling $63, which plaintiff cashed. She asserts, and he admits, that he gave her permission to do this: he says it was to have repairs made to the house, and she says that this is what she did with it. He doesn't deny that she spent it so, saying only that

he doesn't know but "understands" that she did not. For lack of any proof this claim must be denied.

Plaintiff makes three claims.

The first is for a year's support of a minor daughter at $15 per week. The child was 14 in 1946, spent two years thereafter in the House of the Good Shepherd, and then lived with plaintiff for a year, during which time the plaintiff supported her. She must now be 19 and is presumably emancipated, although nothing appears in the record about that. However, the claim is limited to a year.

While this proceeding is in the nature of an arbitration, I consider it wise not to heave the law overboard on that account. Since the law, with such moderate application as the circumstances warrant, is about the best yardstick we have by which to measure rights and responsibilities, I feel that I should follow it. The law, of course, puts an end to the claim, for no support order can be made retroactively: Commonwealth ex rel. Yeats v. Yeats, 168 Pa. Superior Ct. 550 (1951). The circumstances are, of course, peculiar, since defendant is in prison and a support order against him would be useless. Had one been got in 1946, its arrearage might now be collected, but I know of no authority that permits a present lump sum to be recovered for past support when a financial windfall occurs. This claim is therefore denied.

Plaintiff's final claim is for the amount spent by her for taxes, interest, and amortization on the $2,300 mortgage during the separation period before divorce —from November 23, 1946, to January 7, 1949. The figures, per letter of the association, are $173.29 for interest, $313.67 for taxes, and $731.61 on account of principal—a total of $1,218.57. Both counsel state this amount as $1,120.48, and I shall take their figure on the theory that the charges of the association were

figured ahead to November 1949, whereas the divorce occurred on January 9, 1949; hence the difference must be a deduction to the earlier date.

Of this amount the pure carrying charges are allowed, being the total of taxes and interest, or $486.96. I presume this should also be reduced proportionally to the earlier date, and as the reduction percentage is about eight percent, the total allowed is therefore $448.

The principal, reduced by eight percent, is $673.09. I see no better way to reflect the idea of capital value thus added to the property than to halve this figure. Plaintiff is therefore allowed $336.55.

Total allowance to plaintiff on this claim is $784.55.

Against plaintiff's total allowed claim of $784.55 there is defendant's total allowed claim of $525.

There is, therefore, a final balance in plaintiff's favor of $259.55, which will be charged against defendant's share and credited to plaintiff's.

Counsel reports a judgment against both defendants in the case of Antonio and Rose DiMarino v. Thomas and Louise Marino, M. C., February term, 1947, no. 306, which, if entered as a lien of record under the act, must be charged against the whole fund, together with interest at six percent on the judgment from March 26, 1947, its date of entry. Costs of that suit and of this one must also be deducted from the fund before division.

*Order*

And now, October 31, 1951, the trustee is directed to make payment of the fund resulting from the sale of 2042 South Chadwick Street, Philadelphia, as follows:

1. Out of the whole fund to pay:

(a) Her fee of $250 and the costs of this proceeding;

(b) Any liens of record entered jointly against the parties.

2. After the above payments, to divide the balance in equal halves, to charge defendant's half with the sum of $259.55, to credit plaintiff's share with the sum of $259.55, and to remit the balances to counsel for the respective parties.

3. Any liens of record against either of the parties individually shall be charged against his or her share in accordance with the provisions of the act.